ORIGINAL

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
### BID PROTEST

FILED

SEP 2 5 2017

U.S. COURT OF
FEDERAL CLAIMS

| | |
|---|---|
| GOODWILL INDUSTRIES OF SOUTH FLORIDA, INC. ) | |
| Plaintiff, ) | No. |
| v. ) | 17 - 1321 C |
| THE UNITED STATES ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff Goodwill Industries of South Florida, Inc. ("Goodwill"), by its undersigned counsel, hereby submits this bid protest complaint.

### INTRODUCTION

1.      This is a bid protest action necessitated by the improper decision of the Department of Veterans Affairs ("VA") to take corrective action related to the award of a contract for internment flags, made to Goodwill Industries of South Florida, Inc. ("Goodwill") under Contract No. V1119-17-C-0023.   Goodwill, a U.S. AbilityOne Commission nonprofit agency, has used a largely significantly disabled workforce to produce the flags for many years pursuant to the U.S. AbilityOne Procurement List.   The improper corrective action includes termination of the Contract, purported re-consideration of the VA's acquisition strategy, and implementation a new acquisition strategy.   The VA issued this purported corrective action in response to a baseless United States Government Accountability Office ("GAO") protest filed by A2Z Supply Corp. and A2Z Promo Zone (collectively "A2Z").    When asked for the rationale behind the corrective action, the VA provided none.

Received - USCFC

SEP 2 5 2017



2.     The VA's corrective action contravenes the Javits-Wagner-O'Day ("JWOD") Act, 41 U.S.C. Chapter 85, FAR Subpart 8.7, the U.S. Ability One Commission regulations, *and* the VA's March 2017 Class Deviation No. 7773453.   Although significant disagreement exists regarding the purported intersection between the U.S. AbilityOne Procurement List and the Veterans Benefits, Health Care, and Information Technology Act of 2006 ("VBA") Rule of Two, even the VA's Class Deviation (under challenge in two federal district courts) *requires* that the VA acquire items on the U.S. AbilityOne Procurement List provided that the U.S. AbilityOne Commission added the items to the Procurement List prior to January 7, 2010.  The Department of Veterans' Affairs has affirmed its intent to follow the March Class Deviation as recently as Friday, September 15, 2017 in the United States District Court for the District of Columbia.  The U.S. AbilityOne Commission added the involved Goodwill and the involved flags to the Procurement List by Federal Register Notice dated July 30, 2004.  *See* 69 Fed. Reg. 45672-02, Ex. "A".   Goodwill is a statutorily required supplier.

3.     A2Z's GAO protest thus lacked procedural and substantive merit.

4.     Moreover, the VA has failed to explain its corrective action decision, which was inappropriate and contravened the VA's own stated position.

5.     There is nothing correct about action which violates federal procurement law, strips a nonprofit agency of work it has held for years, and leaves numerous significantly disabled persons (including significantly disabled veterans) unemployed.

6.     Goodwill, accordingly, respectfully requests that the Court (a) declare that the VA's decision to take corrective action terminating Goodwill's contract and re-considering and implementing a new acquisition strategy in response to a baseless protest is both unreasonable and in violation of federal law and regulation, and (b) issue preliminary and permanent

injunctive relief enjoining the VA from terminating Goodwill's contract and from undertaking any further efforts to re-open or re-consider the competition and make a new source selection decision.

## PARTIES

7.      Plaintiff, Goodwill Industries of South Florida, Inc.   ("Goodwill") is an AbilityOne non-profit agency which assists the significantly disabled in maintaining employment.   Goodwill is a non-profit 501(c)(3) corporation organized and existing pursuant to the laws of the State of Florida, with its principal place of business in Miami, Florida.

8.      Defendant is the United States of America acting through the VA.

## JURISDICTION AND VENUE.

9.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1491(b).

10.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1491(b).

## STANDING

11.      Goodwill has standing to protest VA's corrective action because Goodwill's direct economic interests are affected by VA's decision to take corrective action, including terminating Goodwill's contract and re-considering its acquisition strategy.  28 U.S.C. § 1491(b)(1); *see also Sheridan Corp. v. United States*, 95 Fed. Cl. 141, 148 (2010); *Centech Group, Inc. v. United States*, *aff'd*, 554 F.3d 1029 (Fed. Cir. 2009) (finding that where the plaintiff, as the contract awardee, files a protest challenging an agency's decision to resolicit proposals, the plaintiff has standing and the protest "is in the nature of a pre-award claim"); *Wildflower Intern., Ltd. v. United States*, 105 Fed. Cl. 362, 384 (2012) ("CBP's corrective action implemented during the course of a procurement, and corrective action taken during the course of procurement falls within the court's bid protest jurisdiction…That a contract termination is involved in an agency's

corrective action conducted during the course of a procurement, as is the case here, 'does not divest the court of its bid protest jurisdiction'") (citing *Sys. Application & Techs., Inc. v. United States*, 100 Fed. Cl. 687, 705 (2011)).

## BACKGROUND

### The AbilityOne Program

12.     The Javits-Wagner-O'Day ("JWOD") Act reflects "the policy of the [Federal] Government to increase employment and training opportunities for persons who...have [significant][1] disabilities through the purchase of commodities and services from qualified nonprofit agencies employing persons who...have [significant] disabilities..."). 41 C.F.R. § 51-1.1(a).

13.     To further this policy, the U.S. AbilityOne Commission ("AbilityOne") "shall maintain and publish in the Federal Register a [P]rocurment [L]ist." 41 U.S.C. § 8503(a).

14.     After AbilityOne adds a product or service to the List using the Administrative Procedures Act's ("APA") notice and comment procedures, *id.* at § 8503(a)(2), the JWOD states "[a]n entity of the Federal Government intending to procure a product or service on the procurement list . . . **shall procure** the product or service" from a qualified non-profit agency for the blind or severely disabled. *See* 41 U.S.C. § 8504(a) (emphasis added) (identifying exception only for supplies from Federal Prison Industries, Inc.); *see also* 4 C.F.R. Chapter 51; 48 C.F.R. Subpart 8.7 (implementing the Procurement List mandate in AbilityOne Commission regulations and the FAR respectively).

15.     In other words, once an item is added to the List, the JWOD requires federal agencies to purchase that product from the designated non-profit as a "mandatory source," which

---

[1] The AbilityOne Commission today prefers the term "significantly" disabled over the regulatory vocabulary "severely" disabled.

the agency must use prior to entering the competitive marketplace. 48 C.F.R. § 8.002. Significantly, the other mandatory source identified by the FAR include, for example, "inventories of the requiring agency" and "excess from other agencies." *Id.*

16.     Only if a "mandatory" source does not exist may an agency consider so-called "non-mandatory sources" or "other sources." Generally speaking, "non-mandatory sources" are marketplace sources. The FAR provides: "When satisfying requirements from non-mandatory sources, *see* 7.105(b) and part 19 regarding consideration of small business, veteran-owned small business, service-disabled veteran-owned small business, HUBZone small business, small disadvantaged business (including 8(a) participants), and women-owned small business concerns." 48 C.F.R. § 8.004. Thus, at all relevant times to this action, and continuing today, the federal Government has identified veteran-owned small business and service-disabled small businesses as a "non-mandatory" source.

17.     While the Commission has final authority for adding products to and removing products from the List, it has historically worked with agencies, including the VA, when determining what items should be added to the List. *See,* 41 U.S.C. § 8503(d).

18.     In or about 1993, the Commission added the first quantities of "Internment Flags" to the List and Goodwill began producing the flags in 1994; subsequent additions raised the total percentage of flag production that is on the Procurement List to 50%. *See* 69 Fed. Reg. 45672-02.

### The VBA

19.     Congress passed the VBA on December 22, 2006, PL 109–461, December 22, 2006, 120 Stat. 3403. This was decades after the JWOD Act and enacted with all of the FAR "mandatory source" and "non-mandatory source" regulations in effect.

5

20.     The VBA sought (in part) to "increase contracting opportunities for small business concerns owned and controlled by veterans and small business concerns owned and controlled by veterans with service-connected disabilities" ("SDVOSBs").  *See* 38 U.S.C. § 8127(a).

21.     To that end, the VA must set specific annual goals for VA contracts to be awarded to veteran-owned small businesses and service-disabled veteran-owned small businesses. *Id.* at § 8127(a)(1).

22.     Further, the VBA included the "Rule of Two," which restricts competition for contracts to veteran-owned small businesses and service-disabled veteran-owned small businesses in cases where the contracting officer "has a reasonable expectation that two or more small business concerns owned and controlled by veterans will submit offers and that the award can be made at a fair and reasonable price that offers best value to the United States" ("the Rule of Two"). *Id.* at § 8127(d).

23.     Unlike the AbilityOne Program which applies across government agencies, the VBA applies only to services and supplies procured by the VA. *See* 48 C.F.R. § 819.7002.

### *Kingdomware Technologies v. United States*

24.     Since its enactment, the VA Rule of Two has engendered litigation and confusion. The VA itself has taken several radically divergent positions on the meaning of the Rule of Two.

25.     In *Kingdomware Technologies, Inc. v. United States*, ___ U.S. ___, 136 S.Ct. 1969 (2016), the U.S. Supreme Court held that the VA Rule of Two extends beyond meeting the Department's annual small-business contracting goals and applies when the Department orders from the Federal Supply Schedule (a FAR designated "non-mandatory source").

26.     In the run-up to the *Kingdomware* litigation, the VA asserted that, so long as the Department had met its veteran-owned small business and service-disabled veteran-owned small business contracting goals for a given fiscal year, the VBA imposed no Rule of Two obligation to restrict competition to veteran-owned small business and service-disabled veteran-owned small business entities.  This position led to numerous bid protests before the U.S. Government Accountability Office ("GAO").  *See, e.g.*, *In re Aldevra*, B-406205, Mar. 14, 2012, 2012 CPD ¶ 112.

27.     Although GAO consistently took the position that the VA had to follow the Rule of Two *when competing contracts*, regardless of whether it had already met its contracting goals, the VA declined to follow GAO's non-binding recommendations.  Another bid protest forum, COFC, took a contrary view supporting the VA's Rule of Two interpretation.  *See Kingdomware Techs. v. United States*, 136 S.Ct. at 1975 (describing COFC position on Rule of Two).

28.     In the *Kingdomware* procurement, the VA had procured IT services for four medical centers through the Federal Supply Schedule—a non-mandatory competitive source. *See* 48 C.F.R. § 8.004(a) (identifying the FSS as a non-mandatory source).  Since the VA already had met its annual small business contracting goals, the VA proceeded without attempting to satisfy the Rule of Two.  Kingdomware, a service-disabled veteran-owned small business, protested and prevailed before the GAO, but the VA declined to implement GAO's recommendation.  *See In re Kingdomware Techs.*, B-406507, May 30, 2012, 2012 CPD ¶ 165. Kingdomware subsequently re-protested in COFC, where the VA prevailed.  *See Kingdomware Techs., Inc. v. United States*, 107 Fed. Cl. 226 (2012).  After a U.S. Court of Appeals for the Federal Circuit panel affirmed COFC's decision, the Supreme Court agreed to hear the case.

29.     In its decision, the Supreme Court stated that the VBA's prefatory clause, relating to the purposes of the statute, could not alter the plain meaning of the statute's directives.  The Court held:

> § 8127 [of the VBA] is mandatory, not discretionary.  Its text requires the Department to apply the Rule of Two to all contracting determinations and to award contracts to veteran-owned small businesses.  The Act does not allow the Department to evade the Rule of Two on the ground that it has already met its contracting goals or on the ground that the Department has placed an order through the FSS.

*Kingdomware Techs.*, 136 S.Ct. at 1976.

30.     Because the Federal Supply Schedule is a FAR designated "non-mandatory source," *see* 48 C.F.R. § 8.004, the Supreme Court did not address (to any degree) whether Congress intended for the Rule of Two to displace so called "mandatory sources" such as the Procurement List.

### *PDS Consultants, Inc. v. United States*

31.     *PDS Consultants, Inc. v. United States* involved a procurement dispute decided under the Tucker Act's limited waiver of sovereign immunity, which provides for "bid protest" jurisdiction before the COFC. *See* 28 U.S.C. § 1491(b).

32.     In *PDS*, a veteran-owned small business "protested" the VA's procurement of various items included on the U.S. AbilityOne Commission's Procurement List on the basis that, in light of *Kingdomware*, the VA (1) must perform a market survey even for items on the Procurement List and (ii) must procure the items from a veteran-owned small business if at least two such businesses would bid on the procurement.

33.     The central question raised by *PDS* was whether the Procurement List mandate or VA Rule of Two is prioritized where both are implicated in a VA procurement for an item added to the Procurement List on or before January 7, 2010.

34.     The presiding judge in *PDS* granted the plaintiff judgment on the administrative record, including for particular items added to the Procurement List on or before January 7, 2010.  The judge also extended the decision to require application of the VA Rule of Two before the Department can exercise options on the involved preexisting contracts with AbilityOne Program NPAs.

35.     Both the impacted AbilityOne nonprofit agency and the United States have appealed the *PDS* to the U.S. Court of Appeals for the Federal Circuit.  The appeal was docketed on August 2, 2017 as *PDS Consultants, Inc. v. United States*, Fed. Cir. No. 17-2379.

36.     U.S. AbilityOne central nonprofit agency National Industries for the Blind and nonprofit agencies Alphapointe and Winston Salem Industries for the Blind have filed (now consolidated) lawsuits in the United States District Court for the District of Columbia challenging (among other things) the VA's March 2017 class deviation.  *See National Industries for the Blind et al v. Department of Veterans Affairs et al* U.S. District Court, District of Columbia Case No. 1:17-cv-00992.

37.     U.S. AbilityOne central nonprofit agency SourceAmerica and nonprofit agency Bayaud have filed a lawsuit in the United States District of Colorado challenging the VA's March 2017 Class Deviation or any other VA action that contravenes the primacy of the JWOD Act.  *See Bayaud Enterprises, Inc. et al v. US Department of Veterans Affairs et al* U.S. District Court, District of Colorado Case No. 1:17-cv-01903.

38.     On September 15, 2017, at a hearing in the United States District Court for the District of Columbia, the VA stated that it presently intends to continue following the 2017 Class Deviation, discussed *infra*.

### The VA's Various Positions Regarding The Interplay Between The JWOD Act And The Rule Of Two <u>And</u> The VA's Improper Post-*PDS* Actions

39.     Although confusion has reigned as related to the intersection of the Rule of Two

and other competitive contracts, the VA for several years properly accorded the JWOD Act

primacy over the Rule of Two.

40.     Indeed, the VA (following notice and comment rulemaking—*see* 74 Fed. Reg.

64,619 (Dec. 8, 2009)) noted shortly after passage of the VBA that the VA's implementation of

the Rule of Two did not impact the AbilityOne program:

> **9. AbilityOne Program Procurement List Protection**
>
> Comment:   A comment was received stating the AbilityOne Network is the largest source of employment for people who are blind or have severe disabilities, including service-disabled veterans.   The commenter stated that not all veterans are interested in owning a business as many prefer employment support, which is available through AbilityOne.   One commenter expressed concern that this rule may adversely affect future AbilityOne contracts, which may result in fewer employment opportunities for veterans.   The commenter stated the set-asides do not offer protection for disabled veterans who cannot or do not want to own their own businesses.
>
> Response:   <u>This rule will not negatively impact AbilityOne and its ability to continue to provide employment to disabled veterans.   This rulemaking does not alter AbilityOne's status in the ordering preference for current or future items on the AbilityOne procurement list.</u>
>
> Comment:   Many commenters stated that the language in the rule does not offer sufficient protection for current AbilityOne program procurement list projects. The commenters request that while VA acquisition personnel may provide VOSB and SDVOSB with priority for new requirements, there should be no "poaching" of current AbilityOne projects.   The commenter further stated that once a project is on the procurement list, the item should remain on the list unless VA receives consent to take the item out of the AbilityOne program.
>
> Response:   <u>We appreciate the comments; however, AbilityOne's priority status has not been changed as a result of this rule.   Further, this rule does not impact items currently on the AbilityOne procurement list or items that may be added to the procurement list in the future.</u>

74 Fed. Reg. 64,619 (rule effective January 2010) (underlines added & bold in original).

41.     In a spring 2010 internal letter, the VA again affirmed the primacy of the JWOD

Act Procurement List over the Rule of Two:

> The Javits-Wagner-O'Day Act (41 United States Code (U.S.C.) 46-48c) requires
> government agencies to purchase supplies or services from items contained on a
> procurement list maintained by the Committee for Purchase From People Who
> Are Blind or Severely Disabled.  This program is branded as the AbilityOne
> Program.  The National Industries for the Severely Handicapped and the National
> Industries for the Blind assist in administering the AbilityOne Program.
>
> * * *
>
> <u>The Veterans First Contracting Program final rule does not affect AbilityOne's
> order of priority in relation to the Veterans First Contracting Program.  Therefore,
> all items currently on the AbilityOne Procurement List as of January 7, 2010, will
> continue to take priority over the contracting preferences mandated by P.L. 109-
> 461.</u>  However, all new requirements will be subject to the contracting preferences
> mandated by P.L. 109-461 prior to being considered for placement with the
> AbilityOne Program.  This policy provides an equitable solution by ensuring VA's
> continued commitment to AbilityOne, while also recognizing the changes to VA's
> small business hierarchy.

(Letter Dated April 28, 2010 (No. IL 001AL-10-06), Ex. "B" (underlines added).)  Although the

internal letter did encourage agency contracting officers to apply the Rule of Two prior to

recommending new work for placement on the Procurement List after January 7, 2010, the VA

again recognized the VA's obligation to comply with the JWOD Act regardless of when the

AbilityOne Commission added the item to the Procurement List.

42.     Following the *Kingdomware* decision, the VA issued VA Procurement Policy

Memorandum 2016-05 - Implementation of the Veterans First Contracting Program as a Result

of the U.S. Supreme Court Decision ("Memo. 2016-05"; Ex. "C") and Class Deviation-Veterans

First Contracting Program (VFCP 2016; Ex. "D").  Consistent with the VA's 2009 final rule and

2010 information letter, the Memorandum and Class Deviation continued to recognize that the

Procurement List, as a mandatory source, maintained priority over the Rule of Two:

**808.002 Priorities for use of mandatory Government sources.**

(a)(1) Supplies.

\* \* \*

(iv) Supplies or services that are on the Procurement List maintained by the Committee for Purchase from People Who Are Blind or Severely Disabled, known as AbilityOne (FAR subpart 8.7), are mandatory sources. However, VA contracting officers shall, prior to adding any new VA requirements to the Procurement List, conduct market research, apply the VA Rule of Two to consider Vendor Information Pages (VIP) verified service-disabled veteran owned small businesses (SDVOSBs) and veteran-owned small businesses (VOSBs) as required in 38 U.S.C. 8127 and implemented in subpart 819.70. All new VA requirements must be approved by the Chief Acquisition Officer, via the Senior Procurement Executive, before contacting the Committee for adding to the Procurement List.

(2) Services. Services that are on the Procurement List maintained by the Committee for Purchase From People Who Are Blind or Severely Disabled (see FAR subpart 8.7).

\* \* \*

(c) The statutory obligation for Government agencies to satisfy their requirements for supplies or services available from the Committee for Purchase From People Who Are Blind or Severely Disabled also applies when contractors purchase the supplies or services for Government use.

**808.004-70 Use of non-mandatory sources by VA.**

(a) In order to fulfill the requirements of 38 U.S.C. 8127 and 8128 (see subpart 819.70), contracting officers shall award contracts (see FAR 2.101 for the definition of contracts), including Blanket Purchase Agreements (BPAs) and orders against Federal Supply Schedules (FSS) and provide priority in the awarding of contracts to verified SDVOSBs or VOSBs. Contracting officers shall ensure priorities for veteran-owned small businesses are implemented within the VA hierarchy of small business program preferences in subpart 819.70.

(July 25, 2016 Class Deviation, Ex. "D" at 23-24.) Although the VA again sought to discourage VA personnel from affirmatively seeking to add new work to the Procurement List, the July 25, 2016 Class Deviation recognized the "mandatory" versus "non-mandatory" distinction and the respective statuses of the Procurement List and the Rule of Two.

43.     During the *PDS* action, as part of an attempt to get the matter dismissed, the VA issued Class Deviation (Revised) - Implementation of the Veterans First Contract Program VAIQ No. 7773453:

(a)(1) *Supplies.*

(i) VA inventories including the VA supply stock program (41 CFR 101-26.704) and VA excess.

(ii) Excess from other agencies (see FAR subpart 8.1).

(iii) Federal Prison Industries, Inc. (see FAR subpart 8.6 and VAAR 808.603).

(iv) Supplies on the Procurement List maintained by the Committee for Purchase [F]rom People Who Are Blind or Severely Disabled, known as AbilityOne (FAR subpart 8.7).

**(A) Supplies on the Procurement List are mandatory only if:**

**(1) The supplies were added to the Procurement List prior to January 7, 2010, and the date the supplies were added is readily available; or**

**(2) The supplies were added to the Procurement List on or after January 7, 2010, the VA Rule of Two (see VAAR Class Deviation 802.101 definition) was applied prior to the addition of the supplies to the Procurement List, and that information is readily available.**

**(B) The VA Rule of Two must be applied prior to VA requesting addition of new supplies to the Procurement List. On or after January 7, 2010, if supplies were added to the Procurement List at the request of an agency other than the VA, the VA Rule of Two will be applied prior to VA purchasing the supplies from the Procurement List**

**(C) When the VA Rule of Two is not satisfied and award to eligible SDVOSBs/VOSBs (pursuant to VAAR subpart 819.70) will not occur, the priority use of AbilityOne in accordance with FAR 8.002 applies.**

(v) Wholesale supply sources, such as stock programs of the General Services Administration (GSA) (see 41 CFR 101-26.3), the Defense Logistics Agency (see 41 CFR 101-26.6), and military inventory control points.

> **(2)** *Services.*  **Services on the Procurement List maintained by the Committee for Purchase from People Who Are Blind or Severely Disabled, known as AbilityOne (FAR subpart 8.7).**
>
>> **(A) Services on the Procurement List are mandatory only if:**
>>
>>> **(1) The services were added to the Procurement List prior to January 7, 2010 and the date the services were added is readily available; or**
>>>
>>> **(2) The services were added to the Procurement List on or after January 7, 2010, the VA Rule of Two was applied prior to the addition of the services to the Procurement List, and that information is readily available.**
>>
>> **(B) The VA Rule of Two must be applied prior to VA requesting addition of new services to the Procurement List.  On or after January 7, 2010, if services were added to the Procurement List at the request of an agency other than the VA, the VA Rule of Two will be applied prior to VA purchasing the services from the Procurement List.**
>>
>> **(C) When the VA Rule of Two is not satisfied and award to eligible SDVOSBs/VOSBs (pursuant to VAAR subpart 819.70) will not occur, the priority use of AbilityOne in accordance with FAR 8.002 applies.**
>
> **(b)** *Unusual and compelling urgency.*  The contracting officer may use a source lower in priority than as specified in FAR 8.002 and VAAR 808.002 when the need for supplies or services is of an unusual and compelling urgency (see FAR 6.302-2 and FAR 8.405-6).
>
> **(c)** The statutory obligation for Government agencies to satisfy their requirements for supplies or services available from the Committee for Purchase From People Who Are Blind or Severely Disabled also applies when contractors purchase the supplies or services for Government use.

(2017 Class Deviation (Revised), Ex. "E" at 6-7 (bold added & italics in original).)  This further

Class Deviation (Revised) altered the JWOD Act's primacy over the Rule of Two and

fundamentally altered the mandatory versus non-mandatory source distinction present

throughout procurement law.  Nevertheless, the VA continued to recognize the primacy of items

on the Procurement List prior to January 7, 2010.

**The Award to Goodwill**

44.     Goodwill, as noted *supra*, is a non-profit corporation; it is also a participant in the Program as its mission is to provide employment opportunities for significantly disabled persons.

45.     On July 21, 2017, the VA awarded Goodwill Contract V119-17-C-0023 for 75,480 "Internment Flags," ("the Contract"), pursuant to the Program and Procurement List; the Contract included a base year and two (2) one-year options.

**The Protests**

46.     On July 30, 2017, two firms, A2Z Supply Corp. and A2Z Promo Zone filed protests, Docket Numbers B-415006 and B-415006.2, with the GAO ("the Protests").

47.     The Protests challenged, *inter alia,* award of the Contract to Goodwill on the basis that under VBA and its Rule of Two, the VA had to give preference to SDVOSBs before it could fulfill its need for internment flags by contracting through the Program

48.     The protests relied on the two court decisions discussed *supra, i.e., Kingdomware Technologies, Inc. v. U.S.,* 136 S. Ct. 1969 (2016) and *PDS Consultants, Inc. v. United States*, 2017 WL 2480954 at 8-9 (Fed. Cl., May 30, 2017).

**The VA's Corrective Action**

49.     On September 5, 2017, while the protests were still pending before GAO, counsel for the VA notified the GAO attorney assigned to the Protests that the VA intended to take "Corrective Action"

50.     The VA's Corrective Action Notice stated that the VA intended to terminate the Contract for convenience of the government and re-consider its "acquisition strategy" for the Internment Flags and then implement a new acquisition strategy.

51.     On September 12, 2017, Goodwill received the VA's termination for convenience. A copy of the termination for convenience is attached hereto as Exhibit "F".

52.     Goodwill submits that the VA's corrective action violates both statute and regulation, is arbitrary and capricious, and lacks a rational in that: (i) the GAO previously has ruled on this issue in favor of the AbilityOne Program's primacy and would have done so again here; (ii) the VA's action contradicts its own March 2017 Class Deviation and the representations the VA made to the United States District Court for the District of Columbia regarding pre-2010 Procurement List additions; (iii) the VA's action violates the JWOD Act, FAR Subpart 8.7 and the U.S. AbilityOne Commission regulations (41 C.F.R. Chapter 51), indeed the VA lacks the authority to remove items from the Procurement List; and (iv) the VA has not provided any reasoned basis to support its corrective action.

**Harm to Goodwill and the Public Interest and Lack of Harm to the VA**

53.     Unless temporary, preliminary, and permanent injunctive relief is granted, Goodwill will be immediately and irreparably harmed.

54.     If the Court does not suspend the VA's unwarranted "corrective" termination action, Goodwill unfairly will lose the substantial investment it made in connection with this opportunity.  Further, Goodwill will lose the positive experience associated with the contract for its significantly disabled workers.   Still further, Goodwill will need to release numerous significantly disabled persons (including veterans) who rely on this contract as a means of employment.

55.     The courts have repeatedly found that the loss of an opportunity to compete for a contract on a level playing field sufficiently establishes irreparable harm.

16

56.     The public has a strong and overriding interest in maintaining the integrity of the procurement process.  The public also has a strong interest in JWOD-related programs which provide meaningful employment opportunities for the significantly disabled.

57.     The VA's unnecessary and improper termination and corrective action decision undermines the integrity of the procurement process and deprives the public of this important program.

58.     Likewise, there is nothing about this action that offends the VA's interests. Goodwill believes that the VA's initial award decision comports with the law.

**COUNT I**
**THE VA'S DECISION TO TAKE CORRECTIVE ACTION VIOLATES THE LAW, IS**
**ARBITRARY, CAPRICIOUS, AND LACKS REASON**

59.     Paragraphs 1 through 58 of this Complaint are incorporated by reference herein.

60.     A justiciable controversy exists between Goodwill and the VA as to the propriety of the original contract award and the VA's decision to take corrective action in response to the GAO protests.

61.     The VA's corrective action fails to comport with applicable law, rendering the associated corrective action arbitrary, unreasonable, and in conflict with the law.

62.     First, the VA cannot disregard the plain language of the JWOD Act, AbilityOne Commission regulations, and cited FAR provisions, all of which existed when Congress enacted the VBA. *See* 41 U.S.C. § 8504; 41 C.F.R. § 51-1.2; FAR 8.002(a)(2).

63.     However, the Court need not even reach the issue of the JWOD's primacy over the VBA to decide this case.  The VA issued the 2017 Class Deviation specifically to address this issue.  It says, "(A) Supplies on the Procurement List are mandatory only if: (1) The supplies were added to the Procurement List prior to January 7, 2010, and the date the supplies were added is readily available." (2017 Class Deviation (Revised), Ex. "E" at 6-7.) **The flags were**

17

**added to the Procurement List in 1994**.  By the VA's own class deviation, drafted this year to address *PDS*, Goodwill is the mandatory source for the flags.

64.     Further, the VA took the position at the September 15, 2017 hearing in the United States District Court that it is following the 2017 Class Deviation.

65.     Still further, when the VA speaks to revising its "acquisition strategy", the JWOD Act and the FAR make clear that the U.S. AbilityOne Commission has the sole power to delete items from the Procurement List:

(a)  Procurement List.——

(1) Maintenance of list.——The Committee shall maintain and publish in the Federal Register a procurement list. The list shall include the following products and services determined by the Committee to be suitable for the Federal Government to procure pursuant to this chapter:
(A)   Products produced by a qualified nonprofit agency for the blind or by a qualified nonprofit agency for other severely disabled.

(B)   The services those agencies provide.

(2) Changes to list.——

The Committee may, by rule made in accordance with the requirements of section 553(b) to (e) of title 5, add to and remove from the procurement list products so produced and services so provided.

WHEREFORE, Goodwill requests that the Court declare: (i) the VA's decision to take corrective action was unwarranted, arbitrary and capricious; and (ii) the contract awarded to Goodwill under the Solicitation valid and not subject to corrective action based on the A2Z Protest.  Goodwill further requests that the Court issue such preliminary and permanent injunctions as are necessary to prevent the VA from: (i) terminating the Goodwill contract based on the A2Z protest; (ii) taking the corrective action set forth in the VA's September 12 notice or any other corrective action in response to A2Z's protest.

## COUNT II
## THE VA FAILED TO EXPLAIN ITS CORRECTIVE ACTION AS REQUIRED

66.     Paragraphs 1 through 65 of this Complaint are incorporated by reference herein.

67.     The Court will uphold an agency's decision to take corrective action "if it is rational, reasonable, and coherent and reflects due consideration of all relevant factors." rational, reasonable, and coherent and reflects due consideration of all relevant factors." *Systems Application & Techs, Inc. v. United States*, 100 Fed. Cl. 687, 716 (2011). "For purposes of this bid protest dispute, the critical inquiry involves an examination of the reasoning underlying the agency's corrective action. To be reasonable, the agency must have 'examined the relevant data and articulated a coherent and reasonable explanation for [its] decision.'" *Jacobs Tech. Inc. v. United States*, 131 Fed. Cl. 430, 450 (2017) (citing *WHR Grp., Inc. v. United States*, 115 Fed. Cl. 386, 396 (2014)).

68.     Here, the Agency has failed to provide any explanation of its corrective action. Therefore, the Agency's corrective action, which contravenes its own guidance and stated position, is unreasonable.

69.     WHEREFORE, Goodwill requests that the Court declare: (i) the VA's decision to take corrective action was unwarranted, arbitrary and capricious; and (ii) the contract awarded to Goodwill under the Solicitation valid and not subject to corrective action based on the A2Z Protest.   Goodwill further requests that the Court issue such preliminary and permanent injunctions as are necessary to prevent the VA from: (i) terminating the Goodwill contract based on the A2Z protest; (ii) taking the corrective action set forth in the VA's September 12 notice or any other corrective action in response to A2Z's protest.

## PRAYER FOR RELIEF

WHEREFORE, Goodwill prays that this Court:

A.  Issue the declaratory and injunctive relief set forth above; and

B.  Provide such other and further relief as the Court deems just and proper.


Respectfully Submitted,


Marc Lamer
Attorney for Goodwill Industries of South
Florida, Inc.

Kostos and Lamer, P.C.
1521 Locust Street, 9th Floor
Philadelphia, PA 19102

telephone: 215.545.0570
facsimile: 215.545.4617

e-mail: kostos_lamer@msn.com